WILKINS *et al. vs.* VAN WINKLE & COMPANY, and *vice versa.*

| 78 | 557 |
|---|---|
| 90 | 671 |
| 78 | 557 |
| 95 | 419 |

| 78 | 557 |
|---|---|
| f118 | 169 |
| f118 | 1095 |

1. The brief of evidence filed with exceptions to an award being found by the jury to be incorrect, another brief filed by the opposite party and admitted by him to be correct, will stand in lieu of the former for all purposes.
2. Some of the exceptions being *prima facie* good and well pleaded, the court did not err in refusing to dismiss them all on demurrer or on motion.
3. It appearing to this court from the record that the arbitrators were not sworn as the statute prescribes, but took a different oath, and also that the prevailing party had improper intercourse with the arbitrators, and placed in their hands a paper after the evidence was closed and the arbitrators had secluded themselves for deliberation, and whilst the other party was absent, and these matters being amongst the exceptions taken to the award, a judg-

ment of the superior court setting aside the award will not be disturbed, though that judgment was based on other exceptions which, in and by themselves, may not have been sufficient to warrant the court in setting the award aside.

March 31, 1887.

Practice in Superior Court. Arbitration and Award. Practice in Supreme Court. Before Judge RONEY. Burke Superior Court. October Adjourned Term, 1886.

On July 27, 1885, E. Van Winkle & Company entered into a contract with Wilkins *et al.* to furnish, deliver and put in first-class running order, all completed, by the 25th of October thereafter, in the buildings of Wilkins *et al.*, in Waynesboro, the machinery therein described, for a cotton-seed oil mill, it being understood that everything was to be furnished that was needed in a first-class cotton-seed oil mill of the average capacity of 25 to 30 tons per day, agreeing to repair breakage that should occur within one year after October 25th, unless caused by carelessness, and to replace any parts not of sufficient capacity. Wilkins *et al.* agreed to erect the buildings called for by the plans and specifications of Van Winkle & Co., to have them ready in time, to furnish the brick and mortar for all the foundations, masons to do the work and laborers to handle the machinery in putting it up, and to pay eleven thousand two hundred and fifty dollars, one-half when the machinery was turned over in first-class running order, the other half in six months from that date; also to pay four hundred and fifty dollars freight on delivery of machinery.

On November 30, 1885, the parties being at variance, Wilkins *et al.* claiming that they had sustained damage by reason of Van Winkle & Co's not having fulfilled their contract in completing and putting in running order the machinery by October 25, and by reason of their inability to run the oil-mill to its full capacity up to November 30th, these matters were submitted to arbitration, and it was agreed that whatever damage or loss, if any, might be

awarded to Wilkins *et al.* should be deducted from the first payment claimed by Van Winkle & Co., who selected Robert McBride as an arbitrator, while Wilkins *et al.* selected Seaborn J. Bell, and these two selected Moses E. Lambeth. The arbitrators took and subscribed an oath the body of which was as follows:

"We.....................do swear that we will well and truly and faithfully discharge our duties as arbitrators in this submission and a true award render."

They made an award that Van Winkle & Co. had damaged Wilkins *et al.* $2,500 by failing to carry out the contract, and that this amount should be deducted from the amount due by Wilkins *et al.* on the first payment. This was signed by Bell and Lambeth, as arbitrators, and filed in the clerk's office. Van Winkle & Co. filed exceptions to the award on numerous grounds, those material to be stated being as follows:

(2) Because it appears by the record that the arbitrators were not sworn in conformity to law, the oath taken by them being to well and truly and faithfully discharge their duties as arbitrators and a true award render, when the code, section 4232, requires them to swear impartially to determine the matters submitted to them according to law and the justice and equity of the case, without favor or affection to either party.

(3) Because the award was the result of a palpable mistake of law, in the manner pursued by the arbitrators in estimating the damages sustained by Wilkins *et al.*, caused by the delay of Van Winkle & Co. to start up four days after October 25th, 1885, in this, that damages of the most remote, speculative and contingent character were considered by the arbitrators, same being calculations as to damages resulting from the machinery furnished as being inferior to that bargained for, when the fair trial had been had, but the mill was run by ignorant and inferior operatives, losses sustained from the alleged purchase of large quantities of seed to run the mill which were said to have

deteriorated in value; alleged losses of profits by reason of having received an inferior outfit and loss of profits for time mill did not run after October 25th, 1885; profits lost by reduced market price in cotton-seed oil and meal from October 25th, 1885, to time of arbitration.

(7) Because the award originated in a gross mistake of fact by the arbitrators in this, that the arbitrators took for granted, without evidence to support it, that the damage to the cotton-seed on hand at the date of the arbitration was the result of the failure of these deponents to start up the mill in operation by October 25th, 1885, according to contract, being a delay of five days, when in truth and in fact said seed were damaged weeks or months prior to October 25th, 1885, said seed having been purchased as far back as August, 1885, down to date of arbitration, November 30th, 1885, and stored in bulk, where they naturally heated, and some of said seed were purchased in a damaged condition.

(8) Said award is the result of a gross mistake of fact and error in the mode of calculation pursued by the arbitrators. It appeared from the evidence that on the 25th of October, 1885, Wilkins *et al.* had 1,335 tons of seed on hand and two-thirds of said seed were damaged, which damage was assessed against the deponents by said arbitrators. This is alleged as error in this: From the 25th of October to the 30th of November, date of arbitration, there were only twenty-six working days, and had the mill been run to its average capacity, twenty-five tons per day, it could not possibly have consumed more than 650 tons of seed, leaving 635 tons with which Van Winkle & Co. could have had no connection. Of the 650 tons, it appeared from the evidence that 231 tons had been consumed up to the date of arbitration. There were 1,333 tons on hand, and on November 30th, there were 1,052, showing 281 tons consumed. The proceeds and profits of the oil and meal of these 231 tons must be credited to Van Winkle & Co. and deducted from the 650 tons guaranteed capacity, leav-

ing amount not consumed only 369 tons. So if, by the evidence of Wilkins *et al.*, it is shown that two-thirds of this 369 tons were damaged one-half cent per pound for meal and five cents a gallon for oil, then such evidence, with no error in calculation, could not make the difference exceed $1,358.00. Be it understood, however, the mode of calculation was itself a gross mistake and error against Van Winkle & Co. But even that amount should be reduced by the profits on meal and oil realized by said parties on the seed consumed by the mill, the amount of which would be at least $357, leaving the actual amount, according to their calculation, $1,021.75.

(9) The award is void, because the arbitrators, in making their award, considered the evidence of Wilkins *et al.* as to the damages to cotton seed on hand at the time, these deponents averring and suggesting that they are in no way responsible for whatever amount of stock Wilkins *et al.* have purchased for their mill, or its depreciation, said Wilkins *et al.* buying said seed on their own responsibility, the amount of their purchases being guided by their own judgment, and these deponents in no way connected therewith, either as to the kind of seed purchased or amount paid therefor, such purchases to run their mill being a matter entirely outside of the contract of Wilkins *et al.* and these deponents.

Accompanying these exceptions was what purported to be a copy of the evidence introduced before the arbitrators. Wilkins *et al.* filed objections to the exceptions and a traverse of the correctness of the brief of evidence. In respect to the latter, an issue was made and submitted to a jury, who found in favor of the traverse. On demurrer, the court struck a number of exceptions to the award, including that in reference to the oath taken by the arbitrators. He refused to strike others, including the exceptions set out above.

Certain issues were made up and submitted to a jury, among them being an allegation of Van Winkle & Co.

that, after the evidence had been closed and they had left, Wilkins placed before the arbitrators other testimony and communicated with them in reference to certain items of damage claimed. On this point Wilkins testified that Bell came and told him that McBride wanted a copy of some quotations that they had there in the room that evening before the arbitrators; that witness went to get them from the office of an attorney, but found it locked; that he found in his pocket a paper which Van Winkle had brought down with him, known as the *Oil Reporter*, containing quotations of prices of oil and meal and showing the difference between good and bad kinds of them; that he thought the arbitrator of Van Winkle wanted it; that he did not offer it as evidence, but carried it over and handed it to one of the arbitrators, either McBride or Bell; did not think it was in his favor, as the quotations in it were eight or ten days old, and the difference in price would have been greater on a new quotation; that as he came out of the room, McBride asked him either what he would take for seed, or what he had testified he would take, he was not certain which; and he replied to the question; that if he said meal, instead of seed, it was an inadvertence; that he did not mean this for testimony; and that he had given testimony as to quotations on the hearing before the arbitrators.

(These matters were also included in one of the exceptions to the award.)

The jury found in favor of Wilkins *et al.* Afterwards the court sustained the exceptions which had not been dismissed on demurrer, and set aside the award. Wilkins *et al.* assigned error on the refusal to dismiss all of the exceptions; on the refusal to dismiss them after the jury had found that the evidence attached thereto was not full, complete and correct; and on the sustaining of certain of the exceptions and the setting aside of the award. Van Winkle & Co. filed a cross-bill of exceptions, making the following among other assignments of error:

(1) Because the court struck certain exceptions to the award, as above stated.

(2) Because the court refused to allow the arbitrator, McBride, to testify upon the issue as to what testimony was received in evidence before the arbitrators, and also refused to permit him to testify as to the conduct of Wilkins in appearing before the arbitrators and placing before them a newspaper containing quotations, to show damage sustained after the case had closed; this arbitrator not having signed the award.

(3) Because the court admitted, over their objection, new statement of testimony written out by Wilkins after seeing the exceptions to the award filed by Van Winkle & Co., at which time he destroyed the original notes of his testimony given in by him before the arbitrators November 30th, 1885, and retained from that time until May term, 1886.

(4) Because the court refused to allow the introduction of a letter from McBride to Wilkins, referring to his testimony given in to the arbitrators after the case had closed, offering to accept, at the price then fixed by Wilkins, their damaged meal, which letter, it was admitted by Wilkins, he had received and destroyed; this being offered first in chief and afterwards at close of Wilkins's testimony.

(5) Because the court refused to admit the testimony of Van Winkle to the jury as to the circumstances under which the submission was drawn by Col. Jones, as counsel for Wilkins, who was present during the whole trial, and in response to an inquiry of Wilkins as to whether or not he could stop Van Winkle, replied, let him alone; Van Winkle himself having no counsel, and not knowing of the employment of Col. Jones to draw up the submission as the attorney of Wilkins; the court himself determining the fact that, as the witness had signed the submission and knew what he was signing, his testimony was inadmissible to explain the submission or go behind it; it being admitted on both sides that Van Winkle & Co. were

only represented by Van Winkle and that they had no counsel.

(6) Because the court also refused to charge the jury at the close of testimony before them:

(*a*) That if it appears that no witness testified before the arbitrators except Wilkins, and that he appeared in the absence of Van Winkle & Co., and without their knowledge gave any testimony or delivered any paper to them which could be used as evidence to find an award, the presumption of the law is against the legality of such action.

(*b*) If it appears that after the case was closed, Wilkins, in the absence of Van Winkle, appeared before the arbitrators and made any statement verbally, or delivered any paper, the burden of proof is upon Wilkins to show it did not prejudice Van Winkle & Co.

FOSTER & LAMAR; R. O. LOVETT; J. J. JONES & SON, for Wilkins *et al.*

FRANK H. MILLER; P. P. JOHNSTON, *contra.*

BLECKLEY, Chief Justice.

VanWinkle & Co. entered into a contract with Wilkins and others to construct the machinery for a cotton-seed oil mill of a given capacity, and to have it finished by a specified time. They constructed the machinery, but did not complete it within the time stipulated. It was received and operated, but failed for a short period to work up to the agreed capacity. Wilkins and his associates claimed damages for this failure, both in respect to the delay, and in respect to the deficient capacity. The parties entered into a written submission, by which they referred the question of damages to arbitrators, one chosen by each of the parties, and an umpire selected by the arbitrators named; indeed, it was a statutory submission. The arbitrators acted and made an award. The award was filed and recorded, under the statute, and VanWinkle & Co. filed numerous

exceptions to it, at the same time filing a brief of the evidence. Wilkins and his associates moved to dismiss all these exceptions. The court overruled the motion, and entertained some of them. Before anything more was done, Wilkins and his associates made the point that the brief of evidence was not correct, and they filed a brief which they alleged was correct. The two briefs being before the court, an issue was made up between the parties, in which it was alleged on one side that the first brief was correct, and on the other side that it was incorrect, and that the competing brief was correct. The jury tried this issue, and found that the brief of Van Winkle & Co. was not correct. After this finding, the other party renewed the motion to dismiss the exceptions, on the theory that it was the duty of the excepting party to file a correct brief, and as their brief had been found to be incorrect, they had no right to have any exceptions entertained. The court overruled this motion; and subsequently a trial took place upon certain exceptions which the court had not stricken. On that trial, evidence was heard. Wilkins himself was examined as a witness; and the jury found against the exceptions, all of them. Still later, the court adjudicated upon certain other exceptions that had neither been stricken nor submitted to the jury, and upon these the award was set aside. Wilkins and his associates brought their writ of error to the judgment setting aside the award, alleging error in that judgment, and also in failing to sustain their motion to dismiss all the exceptions originally, and again in failing to sustain the motion to dismiss the exceptions, after the jury had found that the brief of evidence was not correct.

Van Winkle & Co. filed a cross-bill of exceptions, in which they set up various errors in the progress of the proceedings, and amongst them, the failure of the court to give a certain charge requested upon the trial of the exceptions which were tried before the jury. Both bills of exceptions are before us and the general question is,

whether the final judgment setting aside the award ought to be affirmed or reversed. To reach that question, we have first to rule upon the action of the court in refusing to dismiss the exceptions, and that involves a determination of the question whether there was any sufficient brief of evidence before the court.

1. The brief of evidence filed with exceptions to an award being found by the jury to be incorrect, another brief, filed by the opposite party and admitted by him to be correct, will stand in lieu of the former for all purposes. It was admitted by Wilkins and his associates that the brief of evidence which they filed was correct, and it was simply a competition between the two briefs, and when the other brief was found to be incorrect, of course it was a legal inference that Wilkins's brief was correct, and as he voluntarily put in that brief and alleged it to be correct, the court had a right to accept it and act upon it as a correct brief; it took the place of the other and should be considered as the evidence in the case for all purposes.

2. With regard to dismissing the exceptions, on the original motion or on the subsequent motion, we hold that there was no error in declining to dismiss all of them because some of them were good, and it turns out in the disposition we make of the case that it is unnecessary to discriminate those which were good from those which were not. If necessary, we could go into that, but it would involve quite a lengthy investigation, and we find it possible to dispense with it without any injustice to either of the parties. Some of the exceptions being *prima facie* good and well pleaded, the court did not err in refusing to dismiss them all.

On the main question, whether the judgment setting aside the award ought to be upheld, we call attention to these facts: This was a statutory submission, and it appears on the face of the proceedings that the arbitrators failed to take the oath prescribed by the statute, that oath being as follows: "Before the arbitrators enter upon a hear-

ing of said cause to make up their award, they shall be sworn impartially to determine the matters submitted to them according to law and the justice and equity of the case, without favor or affection to either party." Code, §4232. They did not take that oath, but in lieu of it they took this: "We swear that we will well and truly and faithfully discharge our duties as arbitrators in this submission and a true award render." Doubtless the statute, in prescribing the oath, meant to call the attention of the arbitrators to their obligations, not only to commit them to the performance of their duties, but to instruct them as to what their duties are; and among these are the important matters of impartially determining according to law and the justice and equity of the case, without favor or affection to either party. This oath seeks to secure the parties against any partiality in the arbitrators, against their departing from the law, and against their losing sight of the justice or equity of the case. And we can see no reason why the arbitrators did not take this oath. In being sworn, the arbitrators either knew the law or they did not. If they knew the law, they ought to have observed it; if they did not know it, they set out in the very inception of their service by committing a gross mistake of law. If they were mistaken in the oath they ought to take, we know not how much mistake of law they may have committed. They set out in their first act with the commission of such a gross mistake, that it is very likely their opinion about law was wrong all through. It is said that this was waived by going on with the reference, but it does not appear that any attention was called to it; it does not appear that there was any knowledge that an improper oath had been taken; at all events, there was no express waiver; and although a waiver may be implied in some cases, and perhaps ought to be implied in many cases, we think, under the circumstances of this case, no such implication ought to hold.

It appears from the evidence, the evidence of Mr. Wil-

kins himself, that he had improper intercourse with the arbitrators after the case was closed and after Mr. Van Winkle, the other party, had gone away; he had this intercourse without the knowledge and out of the presence of the other party. One of his acts was to put before the arbitrators a newspaper which contained some quotations of prices, a subject upon which a part of the controversy turned. He disclaims all improper intention in doing this, and says in his testimony that he considered the newspaper against him; but the newspaper was not in the record; it was not produced, and we only know from his statement what it contained. We cannot understand why he should have put the newspaper before the arbitrators. He says it was at the request of Van Winkle's arbitrator; but we wholly fail to realize that an arbitrator belongs more to one party than the other, especially when they are deliberating upon the case. It is a misconception of the relation of arbitrators to consider one of them as being the arbitrator of one party and the other the arbitrator of the other party. Courts have often held that a feeling of partisanship among arbitrators is incompatible with the impartial state of mind in which they ought to enter upon and discharge their duties. He had no more right to furnish quotations to the arbitrator chosen by Van Winkle than to the one chosen by himself, and besides his own evidence indicates that he really handed the paper to the one he chose himself. He admits that the latter was the one who came to him and asked him for the paper. It went in. What use was made of it is not known. Moreover, it appears from his own evidence that before his arbitrator entered upon his duties, he had a conversation with him, in which he instructed him how to make up the award. Anticipating, he says, that there would be an award in his favor, he instructed them how to shape it, etc. It appearing to this court from the record that the arbitrators were not sworn as the statute prescribes, but took a different oath, and also that the prevailing party had improper intercourse with

the arbitrators and placed in their hands a paper, after the evidence was closed and the arbitrators had secluded themselves for deliberation, and whilst the other party was absent, and these matters being among the exceptions taken to the award, a judgment of the superior court setting aside the award will not be disturbed, though that judgment was based on other exceptions which, in and by themselves, may not have been sufficient to warrant the court in setting the award aside. The court may have put its final judgment on the wrong ground, but the judgment was correct.

Judgment on the writ of error affirmed, and the cross-bill of exceptions dismissed.