## SOUTHERN LIVE STOCK INSURANCE COMPANY *v.* BENJAMIN.

1. When by the terms of a submission in writing certain matters are referred to a named person to act as arbitrator between the parties, who is invested with all the powers conferred upon three arbitrators by the Code of the State of Georgia, and who it is stipulated shall hear evidence and make a finding on matters of fact involved in such dispute, just as three arbitrators would, such a submission is one made under the common law, though the powers of the arbitrator be measured by reference to statutory provisions ; and it is therefore not a condition precedent to the validity of an award made by the chosen arbitrator that he should be sworn before his award is made.

2. Parties to an agreement to submit their differences to an arbitration (not statutory) may expressly waive that the arbitrator be sworn, even if, under the terms of the submission, the arbitrator is required to be sworn; and an award rendered by an arbitrator under such a submission, where the waiver is made, is not illegal because of a failure on the part of the arbitrator to be sworn.

3. An award which is legal and binding on the parties to the submission is likewise binding on a surety on a bond given by one of the parties to pay the eventual condemnation-money which is the amount of the award. The surety on such a bond, not being a party to the submission, has no legal right to complain of an irregularity in the proceeding had under the submission, which the principal could have legally waived, and which he did actually waive, inasmuch as the undertaking of the surety is independent of the submission. Liability on his part can only be avoided by showing that the award as to the principal was for some cause illegal.

Argued June 5, — Decided July 23, 1901.

Action on bond.    Before Judge Reid.    City court of Atlanta.
January 10, 1901.

*Howard E. W. Palmer* and *Thomas L. Bishop*, for plaintiff.
*John L. Hopkins & Sons,* for defendant.

LITTLE, J.    A written agreement for arbitration was entered into between the Southern Live Stock Insurance Company and Cronheim, in which, after setting out the fact that matters of difference existed between the parties as to whether Cronheim, who was for-

merly secretary and treasurer of the company, was indebted to said company in any amount, the following submission to arbitration was agreed to by the parties: "It is, therefore, agreed between said corporation and said Cronheim that the matters in controversy shall be referred to L. Z. Rosser, Esq., who shall act as arbitrator between said parties, and who shall have all the powers conferred upon three arbitrators by sections 4225 to 4247 inclusive of the Code of Georgia, 1882, and who shall hear evidence and make a finding upon the matters of law and fact involved in said dispute or controversy, just as three arbitrators would, and whose award and finding shall be reported to and made the judgment of the superior court of said county [Fulton], just as the award of three arbitrators would be made, with the right reserved to either party to appeal from or except to the award or finding of said arbitrator, in the same manner as if the reference had been made to, and the award had been rendered by, three arbitrators under said sections of the Code of 1882." The following stipulation also appears in the submission: "It is further agreed that, as said Cronheim was not under bond in said office of secretary and treasurer of said corporation, he shall give bond, with a good and satisfactory security, for the eventual condemnation-money in said case, and that the corporation will also give bond for the eventual condemnation-money if any found against it." Thereafter, in accordance with the stipulation in the submission, Cronheim entered into a bond, with Benjamin as security, which, after referring to the matters in controversy between the parties and the agreement to refer them to Rosser to make an award, which should be reported to the superior court, and the further agreement that each of the parties should give bond for the eventual condemnation-money which might be found against either party to the arbitration, concluded as follows: "This instrument witnesseth that H. Cronheim as principal, and Sol. Benjamin as surety, hereby acknowledge themselves held and firmly bound unto the Southern Live Stock Insurance Company to well and truly pay to said Southern Live Stock Insurance Company the eventual condemnation-money that may be found against him, said Cronheim, whatever that may be; and for the compliance with this obligation said principal and surety hereby bind themselves, their heirs and administrators." Rosser, as arbitrator, afterwards made an award, reciting that, after hear-

ing evidence touching the matter in dispute, and argument of counsel thereon, it was his award that Cronheim was indebted to the company in stated sums, and that the company have judgment against him for these sums.    The award was made in March, 1899, and at the September term of the superior court an order was regularly taken making the award the judgment of the court, and in accordance therewith judgment was rendered against the defendant for the sums awarded, an execution was issued, and a return of nulla bona made thereon by the sheriff.

The insurance company then brought suit against Cronheim as principal, and Benjamin as surety, for the amount of the judgment, setting out in its petition the facts above stated.    No defense was made by Cronheim, but Benjamin interposed a defense to the action, by which he denied the alleged indebtedness, and set up that there was no valid award, and that the judgment of the superior court was not legal and did not bind him.    He alleged also, that the bond and submission referred to in the petition contemplated a legal arbitration and award; that the arbitrator selected determined the matter without having taken the oath required by law, which was a prerequisite to his jurisdiction as arbitrator, and without which he was not legally qualified to act; that the defendant did not know of his failure to take the oath, never consented that the arbitrator should hear the controversy or make the award without taking the oath, has never acquiesced in or ratified the proceedings before him, or his award, was not a party to the record or to whatever proceedings may have been had in the superior court, did not know of them, and denied that they have any validity; that the arbitrator declined to act, and so entered it of record, but afterwards assumed to act; that he never afterwards consented that Rosser should sit as arbitrator, was never present at any of the hearings, knew nothing of what was going on, and has never ratified or acquiesced in the acts of Mr. Rosser in this particular.    The plea was demurred to on several grounds, which, in the view we take of the case, need not be specifically referred to.    The demurrer was overruled, and to this the plaintiff excepted.    At the trial the plaintiff introduced in evidence the submission, the bond, the award, the judgment of the superior court, and the execution.    There was on the written submission an entry in the following terms: "I decline to further consider this case.    This Nov. 16/98.    L. Z.

Rosser." The defendants introduced evidence to the effect that Benjamin was not represented by counsel at any of the hearings before the arbitrator, made no consent or waiver before him, and did not know the case was being tried until after the award had been made. Various witnesses testified that Rosser did not take an oath as arbitrator, but that the oath was waived by the attorneys of the plaintiff and Cronheim. The assignments of error are, that the trial judge erred in overruling the demurrer filed to the plea; that he erred in deciding that the arbitrator had to be sworn; and that he erred in directing a verdict in favor of Benjamin, the security, on his plea. These, with other assignments not necessary now to be specifically set out, will be considered in the discussion of the three questions which, in our opinion, control the case. These are: first, whether under the submission the law required the arbitrator to be sworn; second, if it did, whether this requirement could be and was waived by the parties; and third, if required and waived, what effect such waiver would have on the rights of the defendant, Benjamin.

1. We do not understand that it is seriously questioned by the parties that the submission and award rendered thereon was a common-law submission and award. In the supplemental brief filed for the defendant in error it is stated that it has never been claimed at any time, in any court, in any phase of the litigation, that the award now being considered was a statutory award. Certainly a consideration of the provisions of our Civil Code on the subject of arbitrament and award, contained in sections 4474 to 4509 inclusive, will characterize the submission in this case and the award rendered thereunder as an arbitration and award under the common law. Sections 4486 to 4509 inclusive provide for such submissions to a named number of arbitrators possessed of certain designated powers, and impose certain duties and conditions not known to the common law; and a proceeding under these latter sections is expressly denominated a statutory arbitration and award, as distinguished from a submission and award at common law, as set forth in the Civil Code §§ 4474 to 4485 inclusive. One of the provisions in relation to statutory awards is, that the submission shall be in writing; another, that the arbitrators shall be three in number, chosen in a particular manner; and another, that these arbitrators shall take a particular oath; while at common law the

submission may be oral, and any number of persons may be selected as arbitrators, who may hear and determine the matters submitted without any requirement that they take any oath. Another difference is, that under a statutory submission the award shall be made the judgment of the superior court, under certain circumstances and conditions, while there is no provision of our law which prescribes that the award of arbitrators at common law may be made the judgment of the court. Indeed, while under both statutory and common-law submissions the rights of the parties are fixed by the award of the arbitrators, under the former the enforcement of these rights may be by execution issued upon the judgment of the superior court making the award of the arbitrators the judgment of the court, while under the latter the enforcement of those rights is to be had by suit on the award, which, by section 4474 of the Civil Code, under a common-law submission is made binding upon the parties. With these preliminary observations, we come to a consideration of the questions stated above, in their order. It being determined that the submission agreed on in the case under consideration was a common-law submission, and it being conceded that the rules of the common law governing arbitrament and award do not require that the arbitrators shall be sworn, it is necessary to ascertain whether the submission makes such a requirement; for it can not be disputed that, although in a submission under the common law the arbitrators are not required to take an oath, yet if by the terms of the submission it is so directed or contemplated, then the taking of an oath is essential to the validity of an award. It may be well to remark here that the only interest which the surety, Benjamin, can have in this question is to ascertain whether the award rendered was a legal one. He was not a party to the submission, or to the award. His contract with the plaintiff was entirely independent and distinct from that of the submission. He undertook by an obligation, not statutory but voluntary, to secure the payment of an award which might be rendered by the chosen arbitrator against his principal. When, therefore, in this suit, it being an action on the bond, proof was made of the submission and the award, a prima facie case in favor of the obligee was made against the principal and surety on the bond. This could only be rebutted by a successful attack on the award by the surety, and proof that the award was illegal in some manner, or that it was the

result of accident or fraud.    In binding himself to pay the amount of the award the surety, of  course, undertook only to be liable for a legal award.

It is claimed that by the terms of the submission and the bond it was contemplated and provided that the arbitrator should take the statutory oath.    As we have said, the submission being at common law, it is not generally a requirement that the arbitrator should be sworn.  We must, therefore, determine whether or not, by the terms of the submission, the parties required or contemplated that the arbitrators should act only under the obligation of an oath.    It will be noticed that the parties agreed that the matters in controversy should be referred to Mr. Rosser, "who shall  act as arbitrator between said parties, and who shall have all  the powers conferred upon three arbitrators by sections 4225 to 4247 inclusive of the Code of Georgia, 1882, and who shall  hear evidence and make a finding upon the matters of law and  fact involved in said dispute or controversy, just as three arbitrators would."    Evidently the parties sought, by the use of this language, to invest their chosen arbitrator with such powers as were by the code conferred on arbitrators under a statutory submission.    But it is not indicated that they were in any manner seeking to impose qualifications or conditions on the arbitrator.  They simply sought expressly to define the powers with which by agreement they invested him, and these were not only those possessed by an arbitrator at common law, but also those powers which the statute conferred upon arbitrators chosen under its provisions.  By reference to the sections of the code named, it will be found that they embrace all the provisions of law in reference to a statutory award.    Hence, a correct construction of the submission in this regard is that the parties undertook simply to prescribe the *powers* with which the arbitrator selected by them should be invested.    It was easy enough, if the parties had desired that the arbitrator be sworn, to insert such a requirement in the submission.    But language which has for its object simply the investiture of powers can not be so construed as to impose a qualification not required by the law under which the submission was made; the submission being silent as to the imposition of such a qualification, and the law under which the same was made not requiring the arbitrator to be sworn, it must be ruled that taking an oath by the arbitrator was not a condition precedent to his proceeding to

hear evidence and make an award. Nor can any language which appears in the bond imply such a requirement. That instrument simply refers to the submission and the award to be made by the arbitrator. It is our opinion, therefore, inasmuch as the common law, under which the submission was made, does not require an arbitrator to be sworn, and the submission not expressly or by necessary implication having done so, that it was not necessary, in order that an award rendered by him should be legal, that he should first have been sworn.

2, 3. But, assuming for the sake of the argument that it was necessary to the validity of the award made by him that the arbitrator should have been first sworn, the evidence shows that taking the oath by Rosser as arbitrator was expressly waived by the parties at the time he commenced to hear evidence under the submission. It is insisted, however, that no such waiver could legally have been made, and that, if it could, it would not be binding on Benjamin, the surety. We are aware that there are a number of decisions of respectable courts which rule that a waiver of this character is ineffectual where the statute requires the arbitrators to be sworn, and it must be conceded that our statute does so in the case of a statutory award. While this submission is, in our opinion, one under the common law, yet if it had by its terms required, as a condition precedent to the making of an award, that the arbitrator should be sworn, we are disposed to think, nothing else appearing, that an award made without taking the oath would have been illegal. Certainly, the purpose of the oath was only to better protect the interest of the parties, by insuring a faithful performance of the duties which the arbitrator had agreed to perform at the request of the parties, under the sanction of an oath. This being true, and the parties themselves being the better judges of their own interests, and it being in their power alone to select an arbitrator, and to agree on the qualifications which he should possess, we know of no reason why, if it had been their purpose and intention by the terms of the submission that the arbitrator selected by them should have been sworn, they could not, by agreement subsequently made, dispense with the oath. It may be otherwise as to a statutory submission; but certainly, when the law imposes no such requirement on an arbitrator, even if the parties should stipulate that he should be sworn, why might they not subsequently

stipulate that he should not? The public was not concerned in the matter, nor were the rights of any third person to be passed on; the parties undertook originally to create a court for themselves outside of the statutory provisions. Their consent alone gave to it jurisdiction, their agreement alone vested it with powers, and the matter as to *when* they agreed, just so they *did* agree, must be immaterial; and if, after prescribing that the arbitrator should be sworn, they subsequently expressly agreed to waive this requirement, it was, after all, but a change which they made in the submission. As to the power of parties to waive their rights, even those with which they have been invested by law, our Political Code, § 10, declares: "Laws made for the preservation of public order or good morals can not be done away with or abrogated by any agreement, but a person may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest." Mr. Morse in his work on Arbitration and Award, p. 102, on authority, upholds this right of waiver even in the selection of persons as arbitrators who have preconceived opinions on the subject-matter of the submission; and on page 264 he cites a number of cases supporting the text, that strict compliance with the terms of the submission may be waived by the parties. Judge Bleckley, in rendering the opinion of this court in the case of *Wilkins* v. *Van Winkle*, 78 *Ga.* 557, clearly intimates that an express waiver of the oath on the part of the arbitrators may be made by the parties thereto, even in a statutory submission. See page 567 of the report of that case. For authorities so ruling outside of this State, see Kankakee R. Co. *v.* Alfred, 3 Ill. App. 511; Older *v.* Quinn, 89 Iowa, 445; Russell *v.* Seery, 52 Kas. 736; Tucker *v.* Allen, 47 Mo. 488; Cochran *v.* Bartle, 91 Mo. 637, 7 Mo. App. 580; Day *v.* Hammond, 57 N. Y. 479; Rice *v.* Hassenpflug, 45 Ohio, 377; Anderson *v.* Fort Worth, 83 Tex. 107; Hill *v.* Taylor, 15 Wis. 190; Woodrow *v.* O'Conner, 28 Vt. 776.

In any event, under the general provisions of our law cited above, we have no hesitancy in ruling that it was within the power of the parties to the submission in this case to waive the oath on the part of the arbitrator, even if such had been required by the terms of the submission. The effect of such waiver, if no other objection could have been interposed to the award, was to make it legal and binding on the parties. But it is contended that such waiver

could not be made so as to bind Benjamin, the surety on the bond. Why not? Benjamin had nothing to do with the submission. He was not a party to it; he had no differences to be settled by the arbitration. His contract with the company was an independent one, which did not stipulate for a particular kind of submission, or that the arbitrator should be sworn. His obligation bound him to pay the award rendered against his principal, Cronheim, under the submission made by the insurance company and Cronheim, and his only right to attack the award rested on its illegality. As we have seen, it was not a statutory award. Hence, its legality or illegality, in the absence of fraud, rested on the consent of the parties to the submission, and the fact that the award which was made was, in accordance with its terms, agreed to in the submission or subsequently; and if the award was legal as to Cronheim, it must have been legal as to Benjamin, whose right to avoid his bond existed only in the event that the award was illegal. That illegality must necessarily have been such that Cronheim could have avoided it, because it was not contemplated in Benjamin's contract that the award should be made in any particular manner. On the contrary, the submission and award was to be by the agreement of the parties at variance—the company and Cronheim. If it had been stipulated by Benjamin that he would be responsible for an award made by Rosser only in a particular way, or under certain conditions, then he could have required that it be so made. In the absence of any stipulations relating thereto, his inquiry is confined to the questions: Did Rosser render an award? If so, did it legally bind Cronheim? If it did, then it is nominated in the bond that if Cronheim did not pay it he would.

We do not, under the line of reasoning which we think leads to a correct conclusion in this case, consider that the fact that the arbitrator at one time declined to consider the case affected the validity of the award afterwards made by him. Certainly it did not as to Cronheim, for when the arbitrator changed his mind and afterwards entered upon a hearing of the case, Cronheim appeared and participated; so that if there ever had been any reason why this declination (which is unexplained) would give Cronheim a right to object to proceeding further under the submission, he declined to exercise that right and went into the hearing just as if it had never been made. Therefore, as to Cronheim, the award was legal and

binding as far as this point is concerned.    Being binding on Cronheim, Benjamin's obligation was unaffected, because he undertook to see that Cronheim would pay the award which should be rendered against him, and an award which legally fixed a liability on Cronheim measured the liability of his surety, who vouched for the payment of the eventual condemnation-money by Cronheim.    On the introduction of the submission and the award made by Mr. Rosser, the plaintiff in the suit on the bond given by Cronheim and Benjamin was prima facie entitled to a verdict for the amount of the award.    For the reasons stated above, it is our opinion that the defendant, Benjamin, in no way rebutted this prima facie right to recover.    We are further of opinion that while the trial judge did not err in directing a verdict in favor of the plaintiff against Cronheim, he did commit error in directing a verdict, under the evidence, in favor of Benjamin.

<em>Judgment reversed.    All the Justices concurring.</em>