## TRAIN et al. v. EMERSON; et vice versa.

1. Where matters in controversy are submitted to arbitration, and the agreement contemplates statutory arbitration, and an award is rendered by the arbitrators but is not made the judgment of the court as required by the statute, and on that account fails to become effective as a statutory award, it is not binding upon the parties and can not be enforced as a common-law award.

2. Where a line of credit was extended by a bank to a corporation, on condition that the stockholders should indorse notes of the institution for money borrowed, and the stockholders entered into an agreement between themselves to become such indorsers on condition that the limit of credit should not exceed a stated amount, and thereafter one of the stockholders, having notice that his cosureties were violating the agreement as to the limit of credit, or had already done so, indorsed the note, he could not thereafter claim exemption from contribution to his coindorsers who had paid the note, on account of the corporation having exceeded the limit of credit. But, though being an officer of the corporation, if, at the time he indorsed the note on which it was sought to charge him for contribution to his cosureties, he did not have notice that the limit of credit had been exceeded, and indorsed the paper on the representation by his cosureties that the limit of credit was not being exceeded, he could urge the violation of the agreement as to the

limit of credit to be extended to the corporation, in defense of the action by his cosureties against him for contribution.

JANUARY 12, 1916. REHEARING DENIED FEBRUARY 29, 1916.

Complaint. Before Judge Charlton. Chatham superior court. January 18, 1915.

*O'Byrne, Hartridge & Wright,* for plaintiffs.

*F. P. McIntire,* for defendant.

ATKINSON, J. 1. When the case was here on a former occasion (*Train* v. *Emerson,* 137 *Ga.* 730, 74 S. E. 241), the judgment of the trial court was reversed. Among others, the following rulings were made. "3.`In the case now under consideration, the first count in the petition was in favor of three persons, alleging themselves to be sureties on a promissory note, against a fourth person, who was alleged also to be a surety. It was also alleged, that the maker was unable to pay the note, and the plaintiffs paid the amount due on the face of the note and took it up; that the maker was and is insolvent; that at the time the note became due they called on the cosurety to pay his pro rata share, which he failed and refused to do; and that the defendant was indebted to the plaintiffs to the extent of one fourth of the amount so paid, with interest. This count was not subject to general demurrer. 4. The second count was based upon an award. The submission and award which were set out showed an agreement that such award should be returned to the superior court and made the judgment thereof, as provided by the statute. It did not disclose whether this had been done, or, if not, why not, or any reason why it was sought to enforce it as a common-law award, rather than in the statutory manner. It is not competent to enforce an award both as a statutory and a common-law award. This count was accordingly defective. But although the second count was demurrable as it stood, it was error to dismiss the petition as a whole. 5. The plea set up that the parties had made the same submission to arbitration, and the arbitrators had made the same award which the plaintiffs had set out in the second count of their petition, and pleaded that this was an adjudication of the cause of action between the parties. The award could not have been treated as an adjudication binding on one party and not on the other. If it were a final adjudication under the statutory provisions, it should be enforceable in favor of the plaintiff as such. If it were a good common-law award, it would

be binding as such on both parties, and suit could be predicated thereon by the plaintiff. The defendant attacks the count of the plaintiffs' petition which is based on such an award, and at the same time pleads the same award as an adjudication. The plea is defective for the same reason that the count of the plaintiffs' petition is so. Having shown that the submission contemplated proceedings under the statute, and having failed to show either that there were such proceedings as authorized the pleading of the award as a final judgment or adjudication in accordance with the statutory procedure, or that there were not such proceedings under the statute, and that the award could be treated as a good common-law award, the plea was demurrable." After the judgment of the Supreme Court was made the judgment of the trial court, the plaintiffs did not offer to amend the second count; and on the subsequent trial relied only on the first count, which was based on the original cause of action. The defendant, however, filed another plea which, among other things, set up, in bar of the matters alleged in the first count of the petition, the arbitration of such matters between the parties and an award of the arbitrators. In the original bill of exceptions error was assigned upon the refusal to strike so much of the plea as set up matters in bar as above stated. Error was also assigned upon the ruling of the court admitting evidence in support of the plea in bar, and upon the direction of a verdict for the defendant on such plea, based on uncontradicted evidence submitted in support of it. It will be perceived that the decision of this court, as contained in the 4th headnote as above copied, was to the effect that the second count did not allege facts showing a statutory award or a common-law award, and therefore was demurrable as failing to set forth a cause of action based upon an award of arbitrators. There being no amendment to the petition, the second count became eliminated. According to the ruling in the 5th headnote, the plea which had been filed by the defendant to the second count was also defective, for the reason that it failed to set forth a valid award as attempted to be pleaded in bar. The subsequent plea which was filed to meet the ruling of the Supreme Court alleged affirmatively, in substance, that there was an agreement for statutory award, and that the statute was complied with in all respects, except that the award was not made the judgment of the superior court, and under the previous decision of the Su-

preme Court it could not be made so, and that the matters in controversy in the first count were the matters dealt with in the arbitration, and that the plaintiffs' cause of action based thereon had become merged in the award, and that the award was conclusive on the original cause of action, and the plaintiffs were estopped from suing thereòn. Whether under the circumstances the award would be conclusive on the original cause of action would depend upon whether the effect of the failure to make the award the judgment of the superior court would be to leave the award binding upon the parties as a common-law award. The statutes of this State upon the subject of arbitration and award are to be found in the Civil Code, §§ 4485 et seq. It will be perceived from an examination of them that there are substantial differences between a common-law award and a statutory award, and that the advantages to be obtained from them are not the same. Many of the differences are pointed out in the decision of the case of *Southern Live Stock Insurance Co.* v. *Benjamin*, 113 *Ga.* 1088 (39 S. E. 489), which need not now be repeated. Upon principle, if the parties agreed in the contract of submission for a statutory award, the law would not imply a consent to abide by a common-law award. In Deerfield *v.* Arms, 37 Mass. 480 (32 Am. D. 228), it was said: "It appears from the facts stated, that the parties to the present suit agreed to submit certain matters in controversy to an arbitrator, under the provisions of the revised statutes, c. 114. The submission was in its form entirely corresponding with the provisions of the statute, and contained the usual stipulation that the report of the arbitrator should be made to the court of common pleas, and that judgment thereon should be final. But inasmuch as the submission to the arbitrator was acknowledged before the person named as arbitrator, acting in his capacity of justice of the peace, it was ineffectual as a proceeding under the statute, it not being competent for the person proposed as arbitrator to give himself jurisdiction of the case by an act of his own in another capacity, as was held in Drew *v.* Canady, 1 Mass. 158. . . The plaintiffs now seek to enforce their claim as on an award upon a submission at common law, and declare upon the submission as if the same had been made to the arbitrator named in it, without any reference to the statute, or the stipulation that the award shall be returned to the court of common pleas for acceptance and final judgment there-

on. It is very obvious that this is changing the form and character of the submission from the original purpose and design of the parties; but the plaintiffs claim the right thus to enforce the award, because the submission, being inoperative under the statute, can in this way only be rendered effectual. This position is attempted to be maintained by decisions of this court in cases supposed to be analogous. It is urged that the rule of law which has been often applied in the construction of conveyances of real estate, that if they can not operate in the precise manner indicated in the form adopted by the parties, by reason of some technical rule, yet effect should be given to them in some other way, furnishes a strong analogy favorable to .the views of the plaintiffs in the present case. But we think that this doctrine is not to be so applied as to change the contract in a manner that will operate more prejudicially to a grantor than was intended by him. The rule is only adopted for the purpose of carrying into effect the intent of the parties. In the earliest reported case in which this principle was applied in this court, Marshall *v.* Fisk, 6 Mass. 24 [4 Am. Dec. 76], it was stated thus: 'A conveyance of land by deed may here be considered as any species of conveyance necessary to carry into effect the intent of the parties to the deed, and not repugnant to the terms of it.' It is only under this limitation that the rule has been applied, and in all such cases it has been a cardinal principle, that the effect given to the contract is not in violation of the object and purpose of the party executing it. The decision of this court in the case of Thomas *v.* White, 12 Mass. 367, sustaining a suit upon a bond given to the judge of probate as a good bond at common law, where the bond was extra-official and not in pursuance of the statute, although intended by the obligor as a probate bond, is also supposed to furnish a precedent for the application of the doctrine urged by the plaintiff. That case may seem on the first impression to present a question somewhat analogous, as the rights of the parties may be said to be affected by changing the character of the bond to the judge of probate from that of a statute bond to one at common law, inasmuch as by the provisions of our statute all suits on probate bonds are to be originally instituted in the Supreme Judicial Court, while a suit on a bond to the judge of probate, which is only good at common law, must be commenced in the court of common pleas. But the provision that a suit on a

probate bond shall be instituted in the Supreme Judicial Court is merely a statute regulation as to the remedy. It forms no part of the contract, that any action that may be commenced on such a bond shall be originally instituted in one court rather than another. The legal forum, as respects any remedy sought to enforce it, may be changed at the will of the legislature, without impairing the contract or violating any rights of the obligor of such a bond.

"Another class of cases alluded to by the counsel for the plaintiffs is that of gaol bonds not conformable in all respects to the statute on that subject, and which yet have been held good. Also, in the case of replevin bonds, it is said that these have been sometimes considered as good at common law, where they were not made in accordance with the statute. But in all these cases, as well of gaol bonds as replevin bonds, I apprehend it will be found that the circumstance that the form varied from the statute, and thus changed its character from a statute bond to one at common law, did not so vary its effect as in any manner to interfere with the rights of the obligor, by imposing upon him any greater liabilities or depriving him of any stipulations in his favor.

"Do these decisions, or the principle sanctioned by them, furnish any sufficient authority for sustaining the present action? If the law be as claimed by the plaintiffs, it is difficult to perceive any good reason why in all cases of awards upon submissions under the statute, which have been found defective in form, they might not have been enforced as awards at common law. Cases of awards that have been rejected by the court on account of some informality in the submission in not pursuing the requisitions of the statute are of frequent occurrence, but I am not aware of any attempt to enforce them afterwards, by suit, as awards upon a submission at common law.

"To hold that the defendant is liable upon the submission as upon an agreement for arbitration at common law, and that he thereby stipulated to submit the matters in controversy between himself and the plaintiffs to the sole determination of Mr. Saxton without subjecting his proceedings to the supervision of the court of common pleas, would be to substitute another and a very different contract from that into which he entered. It would be inconsistent with the language of the submission, and would deprive

the defendant of a right reserved to himself in the most explicit manner. No principle is better settled than that the agreement of the parties to the submission is to be strictly observed respecting the persons authorized to decide. The submission, being defective as a submission under the statute, for want of an acknowledgment before a justice of the peace competent to act in the case, is wholly inoperative. It being so, the plaintiffs can not maintain an action at common law upon any award made upon it, and it becomes unnecessary to consider the other objections taken to the award."

In Holdridge *v.* Stowell, 39 Minn. 360 (40 N. W. 259), it was said: "There is no question that the parties intended this to be an arbitration under the statute, and to be governed by all its provisions. Upon the question whether, when the parties intend and attempt to make an arbitration under the statute, and fail by not complying with all its essential provisions, it may be treated as a submission at common law, the authorities are at variance; there not being a considerable preponderance either way. The reasons in favor of the proposition are stated in Galloway *v.* Gibson, 51 Mich. 135, 16 N. W. Rep. 310, as well, perhaps, as in any case: 'In law parties may fairly be supposed to intend to do the very thing which they execute; and if they mistake the law, and are disappointed under that mistake, they should not be prevented from carrying out their agreement, if lawful and practicable, in some other way.' The court then goes on to say that the mere question whether judgment should be entered by one process or another ought not to interfere to hinder the completion of the settlement; and on the other side the reason is stated in Sargent *v.* Inhabitants of Hampden, 32 Me. 78: 'The report can not be treated as an award at common law, without annulling the agreement of the parties, and substituting in its place a new and different contract.' The cases which follow the rule adopted in 51 Mich. 135, 16 N. W. Rep. 310, can be sustained only on the theory that, upon a submission to arbitration, the intention and agreement to submit are alone material, and that the mode selected by the parties is not material. Common-law arbitrators not being abolished by the statute, of course the parties may agree on either mode. The differences between the two modes, and the incidents attending them, are so great that, when they have agreed on one, it can. hardly be said that, provided the arbitrator makes an award,

it is indifferent to the parties whether one or the other has been followed. We will mention some of these differences. At common law either party may revoke the submission. The arbitrators need not be sworn. Witnesses before them need not be sworn, unless the agreement to submit so require. The arbitrators must hear the parties in the presence of each other. When the award is made, the authority of the arbitrators is terminated, and the only way to enforce the award is in an ordinary action, subsequently brought. Under the statute, neither party can revoke without the consent of the other. The arbitrators are required to be sworn, as are also the witnesses. Notice being given, the arbitrators may hear one party in the absence of the other. From the time of filing the award the proceeding is pending in and under the supervision and control of the court, which may vacate the award in certain cases, and in others modify or correct it, and, as the statute seems to contemplate, may recommit it to the arbitrators, and the court enters judgment on the award, and the judgment will then. stand as though entered in an ordinary action. The right secured to the parties to have these requirements of the statute complied with, and to have the results which it attaches to the submission, is important. It may have been the sole inducement which led to the submission, rather than have the controversy left to an ordinary action. Where it is clear that the parties intended and supposed they were making a submission securing it, to hold them to a mode of submission which does not secure it would surely be to annul the contract they have intended to make, and substitute in its place a new and different one. The decision .that the award can not stand for any purpose was correct." In Benjamin v. Benjamin, 5 Watts & Serg. (Pa.) 563, it was said: "This action was instituted in the court of common pleas of Bradford county, by David Benjamin against Jesse Benjamin, to recover the sum of $142 with costs, which had been awarded to be paid by the defendant to the plaintiff by arbitrators mutually chosen by them, to whose arbitrament and award they had agreed to submit all matters in variance between them, expressly declaring by their submission, which was in writing under their respective hands and seals, that the submission was 'under the act of 1836.' The submission contained no agreement that it should be made a rule of any court of record, as is required by the first section of the act of

1836; nor was any attempt ever made to have the agreement of submission entered upon the record of any court, and a rule of the court made, that the parties should submit to and finally be concluded by the arbitration which should be made pursuant to the said submission, as is directed by the 2d section of the said act. And, indeed, it is evident that such an attempt would have been fruitless, and could not have availed; for the submission, as has been already mentioned, contained no agreement or provision that it should be made a rule of any court whatever. It is, therefore, clear that the award can not be sustained and enforced as one made under the provisions of the act of 1836. The question then presents itself, can it be considered good as an award made in pursuance of a submission at common law? In the case of an award made under a submission at common law, I take it to be well settled that a mistake on the part of the arbitrators, either in matter of fact, or matter of law, or in both, is insufficient to set the award aside. The arbitrators being a tribunal of the parties' own choice and creation, and generally composed of men who are not much skilled in the law, or very much employed in the investigation and finding of facts from evidence adduced, and who may admit and act upon evidence that would be wholly inadmissible in a court of record, the award is ever considered as valid and binding upon the parties, unless it is impeached on the ground of excess of authority, misbehaviour, partiality or corruption in the arbitrators. Whenever this is shown to be the case, their award will be set aside, but for no other cause. By the 4th section, however, of the act of 1836, an award made in pursuance of a submission under that act may be set aside for a plain mistake committed by the arbitrators, either in matter of fact or in matter of law. Then to consider the award made here as under a submission at common law would go to deprive the defendant of the benefit, which he plainly intended to secure to himself, of excepting to it and having it set aside, if the arbitrators should commit a plain mistake either in matter of fact or in matter of law, or in both, by having it expressly declared in the submission that it was under the act of 1836. We therefore think that the plaintiff below was not entitled to recover in this action the amount of the award, and that the court erred in rendering a judgment in his favor."

We have quoted at length from the decisions above mentioned,

because the statutes referred to in them are quite similar to the statutes on the same subject in this State, and the reasons given for the decisions rendered appear convincing. It is stated in 3 Cyc. 800 (c), that the courts in different States hold differently on the subject; but we think the decisions above mentioned represent the better view. The case of Osborn &c. Mfg. Co. v. Blanton, 109 Ga. 196 (34 S. E. 306), was referred to in Cyc. supra, as supporting the contrary view; but an examination of that case will show that the stipulations in the agreement for submission to arbitration showed an agreement to submit to arbitration upon different terms than those provided for by the statute. As the submission showed that the parties did not contemplate a statutory arbitration, it was ruled that the award could be enforced as a common-law award. This is different from holding that where the parties stipulate for a statutory award, and there is a failure to comply with the statute, whereby the award does not become binding upon the parties as a statutory award, nevertheless it would bind them as a common-law award. No decision of this court has gone to that extent. As the award involved in this case was neither a common-law award nor a valid statutory award (Train v. Emerson, 134 Ga. 589, 68 S. E. 425), it follows that the attempt to settle the matters in issue by arbitration and award was merely futile, and that the plaintiffs were not shut off from pursuing the original cause of action. It was erroneous, therefore, to overrule the motion to strike the plea in bar, and to admit evidence in support thereof, and to direct a verdict on the basis of the plea and such evidence.

2. The cross-bill of exceptions assigns error upon the judgment striking certain paragraphs of the answer, which referred to the original cause of action as set out in the first count. The paragraphs so stricken set up matters as follows: "9th. Further answering said petition, your defendant shows that Standard Candy Company was a corporation of Chatham County, Georgia, the sole stockholders and the amounts of their shares being respectively as follows: James T. Wells, 50 shares; W. F. Train, 18 shares; W. B. Gadsden, 16 shares; C. A. Emerson, 16 shares; making a total of 100 shares, each of the par value of one hundred ($100.00) dollars, or a capital of ten thousand ($10,000.00) dollars. That the assets of said corporation consisted of the stock in trade,

machinery and fixtures of the business, and of candy manufacturing, which business, at the time the company was organized, was purchased from George W. and I. B. Tiedeman, and at a value of seventy-five hundred ($7,500.00) dollars, which said seventy-five hundred ($7,500.00) dollars was made up of contributions from the above stockholders as follows: said Wells thirty-seven hundred and fifty ($3,750.00) dollars; said Train thirteen hundred and fifty ($1,350.00) dollars; said Gadsden twelve hundred ($1,200.00) dollars; and your petitioner twelve hundred ($1,200.00) dollars. 10th. That upon the organization of said company the said Train was made the president of the company, Gadsden the manager, and Emerson the vice-president. That, finding it necessary to use money for the purpose of carrying on the business of the company, said company applied to the Citizens & Southern Bank of the city of Savannah for a line of credit of ten thousand ($10,000.00) dollars, which line of credit was extended to said company upon the condition that the same would be secured by the individual indorsement of the shareholders, said company to obtain said line of credit from time to time, as needed, and to evidence the amounts so obtained by notes bearing the indorsement of the above-named stockholders. That this arrangement was agreed to by your. defendant and the said Wells, Gadsden, and Train, your defendant agreeing to the same, conditioned upon an observance of the limit of credit of the said ten thousand ($10,000.00) dollars. 11th. That said business was conducted entirely by the said Gadsden, under the supervision of Train, and your defendant had no active hand in the management of said business. That from time to time various notes were presented to him for his indorsement, with the explanation that they were carrying out said agreement with the Citizens & Southern Bank, and that the notes were for the purpose of carrying on the business of said company, and your petitioner from time to time indorsed the same. 12th. That said business remained in active operation for a period of about 15 months, during which time said notes were indorsed by the defendant, during which period he was constantly assured that the business was in splendid shape, was thoroughly solvent, and that large dividends, to wit 10 per cent., would be paid for the first year. These assurances were continued until the dividend period had been passed; whereupon an examination of the books of the company

was had, and discovery was made that, instead of the business being upon a solvent basis, they owed large sums of money and had secured from the Citizens & Southern Bank seventeen thousand ($17,000.00) dollars, or other large sums far in excess of the limit of credit placed upon said business, and in violation of said agreement, and in violation of the agreement under which this defendant indorsed said notes. 13th. That, this condition being apparent, this defendant urged an examination of the books of the company by an expert to see wherein such large losses could have been made in so short a time, and to ascertain whether the moneys secured from the bank had gone into the business of said corporation; but this was denied him, the other stockholders claiming it to be a useless expense, and asserting that they were satisfied that there had been no misappropriation of the finances of the company, but merely mismanagement. 14th. Finding it impossible to carry on the business of an insolvent company, the said Train negotiated a sale of the assets of said company, to which your defendant assented, surrendering the stock for the purpose of consummating said sale; whereupon the said Train, Gadsden, and Wells, after applying the purchase-money of said sale to its outstanding obligations, claimed that said business was insolvent in the amount of the note, the subject-matter of this suit, and demanded that this defendant pay one fourth (1/4) of the same, or said sum of seventeen hundred and fifty ($1,750.00) dollars, with interest, unto the said W. F. Train, he asserting that he had taken up said note and that the other indorsers were contributing to his each and equal portion. This demand your defendant refused: 1st. For the reason that, because of the violation of the ten thousand ($10,000.00) dollars credit-limit having been exceeded, his indorsement had been made more perilous, and as a surety he was discharged therefrom, he not having participated in said increase of credit, and never having acquiesced in the same, and being in total ignorance of the fact that the limit had been exceeded. 2nd. Because he in no sense could be compelled to contribute to the other stockholders in the event of losses, except in the proportion his stock bore to the capital stock of said corporation."

If the defendant agreed to indorse notes of the corporation, payable to the Citizens & Southern Bank, on condition that the total credit extended by the bank to the corporation should not exceed

the sum of ten thousand ($10,000.00) dollars, and if the defendant, at the time he indorsed the notes in suit, had notice that his cosureties were violating the agreement or had done so, he could not claim exemption from contribution on account of the excessive credit extended. By indorsing the note under such circumstances, he would have participated in bringing about the situation which produced the excess of credit. But, on the other hand, if the plaintiffs, having actual management of the corporation, procured the defendant's indorsement on the representation that the line of credit was not being exceeded, and that the corporation was solvent and its assets in a prosperous condition, the defendant having no notice that the representations were untrue, the plaintiffs would not be entitled to contribution from him as a cosurety after payment of the note. Applying the above principles to the plea, it was not subject to general demurrer.

*Judgment reversed on both bills of exceptions. All the Justices concur, except Fish, C. J., absent.*